W. P. SEYMORE *v.* THE STATE.

EVIDENCE.— See the opinion *in extenso* for evidence held insufficient to sustain a conviction for theft.

APPEAL from the County Court of Robertson. Tried below before the Hon. J. E. CRAWFORD, County Judge.

The opinion discloses the entire case.

No brief for the appellant.

*H. Chilton,* Assistant Attorney General, for the State.

HURT, J. Seymore, the appellant, was convicted of the theft of a trough of the value of three dollars. The evidence is as follows:

J. W. Stewart, a witness for the State, being sworn says: "I reside in Robertson county, Texas. I know the defendant W. P. Seymore. He is in court (identifies him). I rented for the year 1881, the Durant and Edrington farms. I am living on the Durant farm. When I took charge of the Edrington farm, on the first day of January, 1881, there was upon the place the wooden trough now in controversy. W. P. Seymore, defendant, had the farms rented for the year 1880, and by order of Edrington the farm implements and fixtures were turned

over to me by Seymore. I moved the trough from the Edrington farm to the Durant farm, where I am now living, and placed the trough in my lot and had the same in use. The cedar trough was ·worth three dollars. I rented both places or farms from E. C. Edrington. W. P. Seymore has nothing to do with the same. I pay my rent to Edrington and settle with him for the farms. On the 13th day of July I was away from my home. On my return I found that the trough had been taken away; I never gave my consent to any one to take the trough. Edrington never gave his consent to any one for them to take the trough. There was no one at my house but my wife and children and servant. The defendant Seymore never notified me that he had taken the trough, nor informed me that he had done so.

(Cross-examined.) "Seymore lives in 200 yards of my house, keeps a store, and leases one acre of land from Edrington. There was a plank trough on the Edrington farm, belonging to Seymore. When I took possession of the place I moved the plank trough together with the cedar trough now in controversy from the lower end of the Edrington farm to the Durant farm, and put them in my lot. Some time in April last Mr. Seymore wrote me a note stating that the troughs, that is the plank trough and cedar trough, were his, and to either send them home or pay for them. I replied that the plank trough was his, and he could either come and get it or that I would pay him one dollar for same; also that the cedar trough was not his property, that it belonged to the Edrington farm, and I would not give it up. Mr. Seymore claimed the property openly in April. In 1879 Seymore was agent for Edrington, and in 1880 he had the place leased; he has nothing to do with the place this year, except the one acre upon which his place is situated. I afterwards saw the trough in Seymore's lot at his well. He claimed to own the trough in April last."

Ceasar Grant, a witness for the State, being sworn says: "In 1878 Billy Redden and myself dug the cedar trough. We were tenants on the Edrington farm. It was dug from a tree grown on the Edrington farm, and was dug by permission of Fulks, the agent. We used the trough to water our hogs. When we left the farm we left the trough there, and I left the same on the farm, considering that it became the property of the Edrington farm. Mr. Seymore collected some of the rents in the year 1878; in 1879 he was agent, and in 1880 he worked or leased the place."

Bob Lee, a witness for the State, being sworn says: "I am living with Mr. Stewart on the Durant farm. On the 13th of July last Mr. Seymore came to Mr. Stewart's house in the absence of Mr. Stewart, opened Mr. Stewart's lot gate, and Wash Lockett drove the wagon in the lot, and Mr. Seymore and Wash Lockett put the troughs in the wagon, and drove the wagon off, without saying anything to any one about the taking, or speaking to any one as far as I know. My house is about 50 yards from the lot; I was standing in my door. The trough was taken by Mr. Seymore about 10 o'clock in the morning. Mrs. Stewart was at home."

Wash Lockett, a witness for defendant, being sworn says: "On or about the 13th day of July, 1881, Mr. Seymore told me to drive my wagon up to Mr. Stewart's lot, and that he wanted me to help him bring his troughs home; said that Mr. Stewart had them in his lot and he wanted them. Mr. Stewart's house is about 100 yards from Mr. Seymore's store. I drove the wagon, Mr. Seymore walked behind. I drove to Stewart's lot, which is about 30 yards from Mr. Stewart's house. Mr. Seymore walked through the yard of Stewart and opened the gate, and I drove in. We put both troughs in the wagon, the cedar and plank trough, and I drove the wagon back to his store and put the troughs in his yard. When we

drove up to the gate Mrs. Stewart was sitting on the gallery, and she went in the house; and when we were putting the troughs in the wagon I saw Mrs. Stewart at the window looking at us. And as I drove off, Mrs. Stewart was sitting by the window looking at us. His daughter was sitting on the gallery. His servant was in the back yard. I did not see or hear Mr. Seymore speak to any one; he walked behind the wagon. This was about 10 o'clock in the morning, in day time. They were taken openly, Mr. Seymore telling that they were his; there was no concealment. He put the cedar trough up at his well."

This evidence does not show the defendant to be a rogue. We cannot and will not sustain a verdict and judgment which have for their support such facts as appear in this record. If this man can be legally convicted of the nefarious crime of theft upon such evidence as the above, then, indeed, hundreds of good and honest but imprudent citizens of the State deserve to fill our prisons as felons. We will not confer gravity upon these facts by analyzing them; they utterly fail to support the verdict.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*